J-S17044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.Z.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.Z.F., MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2835 EDA 2024 |

Appeal from the Dispositional Order Entered September 20, 2024
In the Court of Common Pleas of Montgomery County Juvenile Division
at No(s): CP-46-CV-0000711-2023

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED AUGUST 20, 2025**

Appellant, S.Z.F., appeals from the dispositional order entered in the Montgomery County Court of Common Pleas, finding that Appellant committed the offenses of rape of a child, involuntary deviate sexual intercourse ("IDSI") with a child, aggravated indecent assault, sexual assault, and indecent assault, and adjudicating him delinquent.[1] We affirm.

The juvenile court set forth the relevant facts of this case as follows:

> The Montgomery County Juvenile Probation Department commenced the above-captioned delinquency proceeding by filing a petition averring that Appellant committed [several] delinquent acts….
>
> The probation department founded its petition on an affidavit of probable cause sworn by Upper Gwynedd Township Police Detective Jonathan Gill. Detective Gill

_____

[1] 18 Pa.C.S.A. §§ 3121(c), 3123(b), 3125(a)(1), (b), 3124.1, and 3126(a)(1), (7), respectively.

- 1 -

averred that on the night of March 1, 2023, Appellant made non-consensual sexual contact with a boy, K.J.J., who was then six years old (Appellant was 14 years of age at the time—he turned 15 [in June] 2023). Detective Gill also averred that at an earlier time, Appellant made non-consensual sexual contact with another boy, K.F., on multiple occasions.

\* \* \*

K.J.J. testified that he and Appellant were friends who had played together on several occasions, first at Appellant's old home and then at his new home. Around the time of K.J.J.'s sixth birthday, his mother took him to Appellant's new home for a sleepover. K.J.J. slept in Appellant's basement bedroom, which was furnished with two beds, a couch and a television. Before they went to sleep, K.J.J. watched Appellant play video games. When they got into separate beds to sleep, Appellant told K.J.J. to come into Appellant's bed. At the time, K.J.J. was dressed only in his underpants. Appellant pulled K.J.J.'s underpants to his feet. Appellant then put his mouth on K.J.J.'s "private part," meaning his penis. Appellant told K.J.J., "Don't tell anybody." Afterward, K.J.J. went into a bathroom and wiped off or washed off his penis.

Appellant's [attorney] challenged K.J.J.'s narrative on cross-examination, but he remained adamant as to its truth. K.J.J. had made several prompt complaints and prior consistent statements before he testified. For example, as soon as he woke up on the morning after the incident, he told his mother, Radirah Simmons, what Appellant had done to him. Later that day he told his father, James Johnson. Alexis Schlimm, a nursing practitioner, and Bridget Hahn, a social worker, both interviewed K.J.J. at a hospital emergency room the morning after the incident, and both provided sworn testimony that K.J.J. made a statement consistent with his trial testimony. The [c]ourt found K.J.J. to be credible in his testimony.

Both parties produced witnesses who provided expert opinion testimony on forensic serology and DNA evidence collected from K.J.J.'s underpants.

* * *

K.F. testified that he knew Appellant as a member of the household and extended family of the woman whom his father had married two or three years ago, circa 2022. During the relevant time period, K.F. was seven and eight years old and visited his father at that household on weekends. It was the same house, in Jenkintown borough, where K.J.J. had first met and played with Appellant.

K.F. described incidents with Appellant that occurred in the house in Jenkintown, beginning two to three years before he testified. The first occurred when K.F. was drying himself with a towel after showering. Appellant entered the bathroom and began fondling his "private area," meaning his penis. When he protested, Appellant said, "shhh, don't tell." On another occasion, K.F. was partially dressed, putting his pants on in the family room, when Appellant entered, pulled down K.F.'s pants and began fondling his penis. He testified that Appellant performed similar acts a total of six or seven times, always in the bathroom or family room.

K.F. had made two prior consistent statements before he testified. He told his mother, Shaneika Mills, that Appellant had entered the bathroom as he was drying himself after a shower, and that Appellant fondled his penis. Ms. Mills testified that K.F. told her Appellant had fondled his penis five or six times in total, and that the incidents all occurred between two and three years ago. Alexandra Ciarrocchi, a trauma clinician, treated K.F., beginning in November of 2023. At their first meeting, K.F. told her that Appellant had touched his "front private parts," meaning his penis.

(Juvenile Court Opinion, filed 12/12/24, at 1-5) (internal record citations and footnotes omitted).

The Commonwealth filed a delinquency petition against Appellant on September 12, 2023. On June 7, 2024, Appellant filed an omnibus motion seeking to sever the offenses committed against K.J.J. from the offenses

committed against K.F. Appellant also requested a competency hearing for both victims. Ultimately, the court deemed the victims competent and denied the severance request. (*See* N.T. Hearing, 6/14/24, at 23-25).

The parties proceeded to the adjudicatory hearing. At the conclusion of the Commonwealth's case, Appellant made an oral motion for judgment of acquittal. Specifically, counsel argued that "the Commonwealth has failed to establish the dates of claims made by [K.F.] with sufficient particularity so as to make those claims impossible to [defend] against." (N.T. Hearing, 7/12/24, at 5). The court denied Appellant's motion as follows:

> The court finds that given the totality of the circumstances, the Commonwealth has provided sufficient specificity in the charging document and through the testimony at trial, and the totality of the circumstances here includes the age of the complaining witnesses and their respective testimony and the testimony of the additional Commonwealth fact witnesses taken together, again, the court finds that there is sufficient particularity to have enabled the juvenile to appropriately answer to the charges.

(N.T. Hearing, 7/12/24, at 14).

On July 17, 2024, the court found that Appellant had committed five (5) counts of indecent assault, two (2) counts of aggravated indecent assault, and one (1) count each of rape of a child, IDSI with a child, and sexual assault. (*See* Order, filed 7/17/24, at Exhibit A). The court conducted a disposition hearing on September 20, 2024. At that time, the court received testimony from a juvenile probation officer, an impact statement from the mother of one of the victims, and argument from counsel. Following the hearing, the court

entered a dispositional order placing Appellant on probation.

Appellant timely filed a notice of appeal on October 17, 2024. On November 1, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on November 4, 2024. With the court's permission, Appellant filed an amended Rule 1925(b) statement on December 2, 2024.

Appellant now raises two issues on appeal for our review:

Whether the trial court erred in denying Appellant's motion to sever charges/complainants.

Whether the Commonwealth failed to state with sufficient particularity the dates of the allegations in order to satisfy due process.

(Appellant's Brief at 4).

In his first issue, Appellant cites Pennsylvania Rule of Criminal Procedure 583 for the proposition that a court may order separate trials of offenses if it appears that any party may be prejudiced by offenses being tried together. Appellant also cites Rule 563 regarding joinder, which states that offenses may be charged in the same information if, *inter alia*, the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury. Relying on these rules, Appellant asserts that the court erred in denying his request to sever the charges. Appellant maintains that the incidents involving K.J.J. and K.F. were "factually different." (**Id.** at 28). Appellant emphasizes that the assaults occurred in separate locations,

and "K.J.J. accused [Appellant] of oral sex while K.F. accused [Appellant] of indecent assault." (*Id.* at 29).  Further, Appellant baldly asserts that evidence of each of "the charges would not be admissible in a separate trial."  (*Id.*)  Under these circumstances, Appellant insists that the court's denial of his motion resulted in prejudice.  Appellant concludes that this Court must vacate the adjudication of delinquency and dispositional order on this basis.  We disagree.

"The general policy of the laws is to encourage joinder of offenses and consolidation of indictments when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time consuming duplication of evidence."  *Commonwealth v. Hobel*, 275 A.3d 1049, 1067 (Pa.Super. 2022), *appeal denied*, ____ Pa. ____, 286 A.3d 710 (2022) (quoting *Commonwealth v. Johnson*, 236 A.3d 1141, 1150 (Pa.Super. 2020)).  "Whether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant."  *Id.* (quoting *Commonwealth v. Knoble*, 188 A.3d 1199, 1205 (Pa.Super. 2018)).

The Pennsylvania Rules of Juvenile Court Procedure expressly permit a delinquency petition to allege more than one offense:

### Rule 332.  Multiple Offenses in Petition

**A.  Different incidents.**  When more than one offense is alleged to have been committed within a judicial district by a juvenile arising from different delinquent episodes, one petition may be filed.  However, each incident shall be

described separately in conformity with the requirements of Rule 330(C)(4)-(6).

> **B. Same incidents.** When more than one offense is alleged to have been committed within a judicial district by a juvenile arising from the same delinquent episode, a single petition shall be filed.

Pa.R.J.C.P. 332. Regarding the need for separate adjudicatory hearings, the Rules of Juvenile Court Procedure provide:

> **Rule 352.  Separate Adjudicatory Hearings for Offenses or Juveniles.**
>
> The court may order separate adjudicatory hearings for offenses or juveniles, or provide other appropriate relief, if it appears that offenses or juveniles being heard together may prejudice any party.

Pa.R.J.C.P. 352.

To the extent Appellant and the juvenile court also relied upon our Rules of Criminal Procedure, Rule 583 governs the severance of offenses:

> **Rule 583.  Severance of Offenses or Defendants**
>
> The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

Pa.R.Crim.P. 583.

> Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime.
>
> The prejudice of which Rule 583 speaks is, rather, that which would occur if the evidence tended to convict the appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the

> evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

*Commonwealth v. Richard*, 150 A.3d 504, 509-10 (Pa.Super. 2016) (internal citations and quotation marks omitted).

Our Supreme Court has established the following test for deciding a motion to sever:

> Where the defendant moves to sever offenses not based on the same act or transaction that have been consolidated in a single indictment or information, or opposes joinder of separate indictments or informations, the court must therefore determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Collins*, 550 Pa. 46, 55, 703 A.2d 418, 422 (1997), *cert. denied*, 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998) (quoting *Commonwealth v. Lark*, 518 Pa. 290, 302, 543 A.2d 491 496-97 (1988)). Additionally, "it is presumed that a trial court, sitting as fact-finder, can and will disregard prejudicial evidence." *Commonwealth v. Fears*, 624 Pa. 446, 486, 86 A.3d 795, 819 (2014) (quoting *Commonwealth v. Miller*, 605 Pa. 1, 54, 987 A.2d 638, 670 (2009)).

Instantly, the court analyzed the relevant Rules of Juvenile Court Procedure:

- 8 -

> Pennsylvania Rule of Juvenile Court Procedure 332 expressly authorizes a person to file a delinquency petition that alleges more than one offense arising from different delinquent episodes. This rule is logical because a judge—not a jury—finds the facts and decides the verdict in delinquency proceedings. A judge, being learned in the law, is educated and trained to separate the evidence of delinquent acts against different complainants and to consider evidence of separate offenses only for such purposes that are authorized by the rules of evidence. Certainly the [c]ourt did so here.
>
> When a delinquency petition alleges multiple offenses arising from different episodes, the juvenile may move the court to sever the trial of some of the allegations of delinquent acts from the trial of the others. The rule simply states that the court **may** do so if the consolidation of offenses or juveniles would prejudice any party.

(Juvenile Court Opinion at 7-8) (internal citations and footnote omitted) (emphasis added). Here, the court correctly observed that the plain language of Rule 352 gives the court discretion to decide whether severance is necessary. *See* Pa.R.J.C.P. 352.

The court then recognized that there is no "reported opinion of a Pennsylvania appellate court setting forth a test for considering whether juvenile offenses should be severed." (Juvenile Court Opinion at 8). Thus, it reviewed the relevant Rules of Criminal Procedure. Applying the case law interpreting these rules, the court determined that Appellant was not entitled to severance:

> [E]ven if we apply the [*Collins*] test, it is clear that Appellant is not entitled to relief. With respect to the first prong, the evidence of each act may well have been relevant in a trial of the other pursuant to Pennsylvania Rule of Evidence 404(b) as an admissible other act. Specifically,

> the evidence may have been relevant under this analysis to demonstrate motive, common plan, intent, absence of mistake or lack of accident. In reality, however, this is essentially an academic exercise because, as a matter of fact, the [c]ourt considered the alleged offenses involving the complaining witnesses completely separately.
>
> The second prong—relating to jury confusion—is clearly inapposite here because the [proceedings] did not involve a jury. The third prong, whether a defendant would be unduly prejudiced, also does not apply because a judge is presumed to be able to properly categorize and consider evidence.

(**Id.** at 8-9) (internal citations and quotation marks omitted).

We agree with the juvenile court's conclusions, and we cannot say that the court erred in its evaluation of the Rules of Juvenile Court Procedure or in its application of the **Collins** test. To the extent Appellant asserts that he suffered prejudice under Rule 583, we reiterate that a judge is presumed to disregard prejudicial evidence. **See Fears, supra**. Based upon the foregoing, we cannot say that the court abused its discretion in denying Appellant's request to sever, and Appellant is not entitled to relief on his first issue. **See Hobel, supra**.

In his second issue, Appellant argues that the Commonwealth failed to establish the date of the offenses committed against K.F. with sufficient particularity. Appellant acknowledges K.F.'s testimony that: 1) K.F. informed his mother about an incident where Appellant touched K.F.'s private area while K.F. was taking a shower at Appellant's house; 2) K.F. testified that Appellant also touched K.F.'s private area when K.F. was in the family room getting dressed; and 3) K.F. testified that Appellant touched his private area six (6)

to seven (7) times in the family room and once in the bathroom. (**See** Appellant's Brief at 32). Appellant insists, however, that K.F. did not testify "as to the date, day, month or season when these … allegations took place." (**Id.**) Absent more, Appellant contends he was unable to present a defense or an alibi, and he could not attack K.F.'s credibility. Appellant concludes that the Commonwealth's failure to fix the dates of the offenses with reasonable certainty violated his due process rights, and this Court must vacate the adjudication of delinquency on this basis. We disagree.

"A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." **Commonwealth v. Tejada**, 161 A.3d 313, 317 (Pa.Super. 2017) (quoting **Commonwealth v. Smith**, 635 Pa. 38, 46, 131 A.3d 467, 472 (2015)).

> It is the duty of the prosecution to fix the date when an alleged offense occurred with reasonable certainty…. The purpose of so advising a defendant of the date when an offense is alleged to have been committed is to provide him with sufficient notice to meet the charges and prepare a defense.
>
> However, due process is not reducible to a mathematical formula, and the Commonwealth does not always need to prove a specific date of an alleged crime. Additionally, indictments must be read in a common sense manner and are not to be construed in an overly technical sense. Permissible leeway regarding the date provided varies with, *inter alia*, the nature of the crime and the rights of the accused. **See** Pa.R.Crim.P. 560(B)(3), stating that it shall be sufficient for the Commonwealth to provide in the information, if the precise date of an offense is not known, an allegation that the offense was committed on or about

- 11 -

any date within the period fixed by the statute of limitations.

Case law has further established that the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct. This is especially true when the case involves sexual offenses against a child victim.

*Commonwealth v. Brooks*, 7 A.3d 852, 857-58 (Pa.Super. 2010), *appeal denied*, 610 Pa. 614, 21 A.3d 1189 (2011) (most citations and quotation marks omitted). Additionally, "[a] variance is not fatal unless it could mislead the defendant at trial, impairs a substantial right, or involves an element of surprise that would prejudice the defendant's efforts to prepare his defense." *Commonwealth v. Renninger*, 269 A.3d 548, 558 (Pa.Super. 2022), *appeal denied*, ___ Pa. ___, 302 A.3d 95 (2023) (quoting *Commonwealth v. Einhorn*, 911 A.2d 960, 978 (Pa.Super. 2006)).

Instantly, the affidavit of probable cause detailed K.F.'s statements regarding the delinquent acts. K.F. informed the police about Appellant's conduct, and he described where the offenses occurred. K.F. "reported that incidents such as this happened every week when [he and his brother] were staying at the residence with their father." (Affidavit of Probable Cause, filed 9/13/23, at 8).

Ultimately, the court determined that the Commonwealth's inability to specify the exact dates for the offenses against K.F. did not inhibit Appellant's ability to mount a defense:

Appellant asserted that … he was placed at a disadvantage because he had no practical way of proving that K.F. did not

- 12 -

visit his house on a particular date. However, K.F. provided detailed testimony of the various instances of sexual assault in the bathroom and family room. The assaults all occurred in the same house, two to three years prior to his testimony. The first incident occurred when K.F. was drying himself off after showering. These are specific allegations that served to provide Appellant with particularized notice of the time frame and nature of the allegations.

\*     \*     \*

Appellant's motion for judgment of acquittal was made at the conclusion of the Commonwealth's case. Prior thereto, the [c]ourt had the opportunity to analyze Appellant's claims with respect to inadequate notice after hearing from K.F. and other witnesses. The [c]ourt found K.F. to be wholly credible in his testimony and concluded that there was a reasonable basis for the Commonwealth's inability to precisely identify the dates of the alleged conduct.

\*     \*     \*

In view of the foregoing facts of record and the totality of the circumstances including K.F.'s young age, the Commonwealth's inability to narrow the range of dates of the alleged delinquent acts against K.F. did not unduly prejudice Appellant's [ability] to respond to the charges….

(Juvenile Court Opinion at 11, 13) (internal footnotes omitted).

Our review of the record confirms the court's findings. K.F. provided detailed testimony at the adjudicatory hearing as to the nature of Appellant's conduct. K.F. also provided his age at the time of the offenses, as well as the location and frequency of the incidents. (**See** N.T. Hearing, 6/14/24, at 70-112). Considering Appellant's involvement in a continuous course of criminal conduct, the juvenile court correctly afforded the Commonwealth broad latitude to attempt to fix the dates. **See Brooks, supra**. Thus, the court did

not violate Appellant's due process rights.  ***See Tejada, supra***.  Accordingly,

we affirm.

Dispositional order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/20/2025